WILLIAM HENRY ROBERTS, Plaintiff, *v.* OLGA PETROVA, Defendant.

Supreme Court, New York County, December 1, 1925.

Copyrights — common-law copyright — action at law by British subject for damages arising from infringement of common-law copyright in dramatic production — abrogation of common-law copyright by English Copyright Act of 1911 (1 & 2 George V, chap. 46) does not preclude plaintiff from maintenance of action in Supreme Court — Supreme Court has jurisdiction.

Plaintiff, a British subject, has a sufficient common-law copyright in a dramatic production, which he sold the defendant, to maintain an action at law in the Supreme Court against said defendant for damages arising from the infringement of said copyright, notwithstanding the fact that the English Copyright Act of 1911 (1 & 2 George V, chap. 46) in effect, abrogated all common-law copyrights in England, in the absence of anything therein indicating an intent to deprive British citizens of the fruits of their intellectual productions in other jurisdictions according to the principles of the common law.

Moreover, the fact that but for the said act plaintiff would have retained his common-law copyright under the laws of Great Britain is sufficient justification for an action in this jurisdiction, predicated upon his common-law rights in his literary production, particularly where the English act does not restrain an action for a breach of trust or confidence:

MOTION by defendant to set aside the verdict of a jury in favor of the plaintiff and for a dismissal of the complaint.

*Ernst, Fox & Cane* [*William Rand* and *Bernard M. L. Ernst* of counsel], for the plaintiff.

*Charles T. Lark* [*Nash Rockwood* of counsel], for the defendant.

JAMES O'MALLEY, J. At the close of the trial all questions raised by defendant's counsel on this motion were disposed of except one relating to the plaintiff's right to maintain his action in this court. This, therefore, is the sole question now to be considered.

The plaintiff is a British subject. He sues at law to recover damages for an infringement of his common-law copyright in a dramatic production, a play called " La Rubia." He wrote it

about the years 1912 and 1913, when a resident of Portsmouth, Eng. An attempt to negotiate its sale prior to the commencement of the World War failed and the play was neither produced nor published anywhere prior to 1918. In that year, by written contract with the defendant made in New York, he sold to her all American and Canadian rights on certain conditions. Among these were an agreement on her part to produce the play within one year, and the payment of specified royalties based upon gross receipts. She was to become coauthor and to have the right to make changes, with the plaintiff's consent, deemed by her to be advisable.

By agreement the name was changed to " The Eighth Sin." It was copyrighted here under the new title in the defendant's name, and, as the jury found, without plaintiff's consent or knowledge.

The play was put in rehearsal in the fall of 1918, but finally, and before the expiration of the year provided in the contract, abandoned by the defendant, who thereby forfeited $1,000 under the terms of the contract, and also all right, title and interest therein. She, however, retained possession of the manuscript.

During the theatrical years of 1921–1922 and 1922–1923 the defendant published and produced a play called " The White Peacock " as her own production. The verdict has established that this play was in law the plaintiff's work, " La Rubia," or " The Eighth Sin," and the evidence to sustain such finding was, in my opinion, ample.

The precise legal question raised on this motion and now to be considered appears not to have been passed upon in this or in any other jurisdiction. At least no adjudicated case has been called to my attention.

It is claimed by defendant that plaintiff has no standing in our court because he has no common-law copyright. The English Copyright Act of 1911 (1 & 2 George 5, chap. 46), it is said, has had the effect of abrogating all common-law copyrights in England; that there remains to plaintiff in his own country only a statutory copyright and that as said statute cannot be given extraterritorial effect (*Palmer* v. *DeWitt*, 47 N. Y. 532; *Ferris* v. *Frohman*, 223 U. S. 424) the plaintiff is out of court. Disposition of the question requires a consideration of the statute and its effect.

Prior to the enactment of this statute there is no question but that the plaintiff had a common-law copyright in England which would have been recognized and protected here. (*Palmer* v. *DeWitt*, *supra; Ferris* v. *Frohman*, *supra.*) Plaintiff contends that such right still exists, and that irrespective of such right he may maintain this action upon the theory of a breach of trust arising out of

contractual relation. ( *Underhill* v. *Schenck*, 238 N. Y. 7.) However, for the purposes of this decision I shall assume that to enable the plaintiff to succeed he must have established in himself a common-law copyright.

It is unnecessary for the purposes of this discussion to quote the statute in full. Only its general effect need be considered. Generally speaking the effect of the act has been to extend to every literary production at the. moment of its creation a statutory copyright in its author, and this irrespective of any affirmative act on his part. The specific provision (§ 31) with which we are concerned is as follows: " No person shall be entitled to copyright or any similar right in any literary, dramatic, musical, or artistic work, whether published or unpublished, otherwise than under and in accordance with the provisions of this Act, or of any other statutory enactment for the time being in force, *but nothing in this section shall be construed as abrogating any right or jurisdiction to restrain a breach of trust or confidence.*" (Italics mine.)

To sustain her contention that the plaintiff has only a statutory copyright in England, and consequently no common-law copyright in this jurisdiction, the defendant relies upon the opinion of certain text writers to the effect that the statute under consideration, by abolishing the right to common-law copyright in England, may have had the effect of depriving a resident citizen of Great Britain suing here, of his common-law copyright. (See Weil's Copyright Law, 139, 140; DeWolf's Outline of Copyright Law, 182.) Certain expressions of our Court of Appeals in *Palmer* v. *DeWitt* (*supra,* 538) are also called to attention. The latter, however, seem not to have even the force of dictum, but are mere semble.

While I think it is clear that the language of the. statute above quoted has had the effect of abolishing common-law copyright in England, I cannot bring myself to the conclusion that under the situation disclosed here, the plaintiff has no common-law copyright in this country. It is to be observed that by the provisions of the italicised portions of the statute above quoted, nothing in the section is to be construed as abrogating any right or jurisdiction to restrain a breach of trust or confidence. This language, it seems to me, should receive an interpretation sufficiently broad to justify at least an action brought under the theory of *Underhill* v. *Schenck* (*supra*), and also an action based upon common-law copyright in this jurisdiction for damages.

Moreover, if, as the defendant rightfully contends, a statute conferring rights and remedies can have no extraterritorial effect, how should the same statute have extraterritorial effect for the deprivation of rights and remedies?

Furthermore, I am of the opinion that the English statute of 1911 destroyed common-law copyright only in a qualified sense, namely, within a defined jurisdiction, and that there is no indication therein of an intent to deprive British citizens from the fruits of their intellectual productions *in other jurisdictions* according to the principles of the common law. So far as the legal effect of this statute is concerned, I am of opinion that the situation here is no different from that presented under the early English statute discussed in *Ferris* v. *Frohman (supra)*. In that case the English authors had lost their common-law copyright in England because of public performance, an act which by virtue of the provisions of the statute then in force had the effect of publication, while such performance here would have had no such effect. In writing for the Supreme Court of the United States, Mr. Justice HUGHES said: " It is argued that the English authors in this case, by the law of their domicile, were without common-law right and in its stead secured the protection of the British statutes which cannot avail them here. But the British statutes did not purport to curtail any right of such authors with respect to the representation of plays outside the British dominions. They disclose no intention to destroy rights for which they provided no substitute. There is no indication of a purpose to incapacitate British citizens from holding their intellectual productions secure from interference in other jurisdictions according to the principles of the common law. Their right was not gone *simpliciter*, but only in a qualified sense for the purposes of the statutes, and there was no convention under which the authors' work became public property in the United States. * * * The deprivation of the common-law right, by force of the statute, was plainly limited by the territorial bounds within which the operation of the statute was confined." (Pp. 433, 434.)

I am of opinion, therefore, that a British subject who but for the English Copyright Act of 1911, would have retained his common-law copyright in that jurisdiction, still has, notwithstanding such statute, a sufficient common-law property right in his literary production as will justify him in maintaining an action in this jurisdiction based upon his common-law rights in his literary production.

Such being the case, this court is one of competent jurisdiction, and the motion to set aside the verdict is denied on all grounds.