**MILLS MUSIC, Inc., Plaintiff,**
v.
**CROMWELL MUSIC, Inc., Defendant.**

United States District Court,
S. D. New York.

July 29, 1954.

See, also 14 F.R.D. 411.

Zissu & Marcus, New York City, for plaintiff (Leonard Zissu, Abraham Marcus and Alan J. Stein, New York City, of counsel).

Miller & Miller, New York City, for defendant (Morton Miller, Meyer Schwartz and Ivan L. Schwartz, New York City, of counsel).

LEIBELL, District Judge.

This is an action by Mills Music, Inc., a publisher, for the infringement of its copyright of the musical composition entitled "Tzena, Tzena", by the defendant, Cromwell Music, Inc., also a publisher.

The complaint pleads two claims or causes of action. The first alleges that about 1941, Issachar Miron (also known as Michrovsky), then a citizen of Palestine, and now a citizen of the State of Israel, composed the musical composition "Tzena, Tzena", consisting of two parts; that about 1947, Julius Grossman, a citizen of the United States, composed a third part to be added to the said composition; that about June 22, 1949 an organization known as the "Young Zionist Actions Committee" (hereinafter referred to as YZAC) published a book entitled "Songs of Israel" which included the three parts of the musical composi-

tion "Tzena", and that the said book was copyrighted in July 1949; that on June 16, 1950, the YZAC assigned to Grossman all rights and copyrights in the composition "Tzena" and all claims for infringement thereof; that on June 22, 1950, Miron and Grossman assigned their rights and copyrights, and claims and causes of action for infringement, to plaintiff; that plaintiff between June 22, 1950 and June 29, 1950, complied with the Copyright Law, and received from the Register of Copyrights a certificate of registration for the musical composition "Tzena", and has published the said musical composition in conformity with the Copyright Law, and thus became and now is the sole and exclusive proprietor of the said musical composition and of all rights and copyrights therein and of all claims for infringement; that since May 1950 defendant has infringed both said copyrights by publishing and selling a musical composition also entitled "Tzena" which was virtually a complete copy of plaintiff's copyrighted musical composition; that both plaintiff and plaintiff's assignor have given defendant notice in writing of defendant's infringement of plaintiff's aforesaid rights.

The second cause of action is based solely on Miron's composition, and the assignment thereof from Miron to plaintiff, about June 1950, together with his claims for copyright infringement. It omits the allegations of the first cause of action as to Grossman's third part, the YZAC publication of the "Songs of Israel", and the assignments by YZAC to Grossman and from Grossman to plaintiff.

The complaint prays for an injunction, damages, an accounting of defendant's profits and the other forms of relief usually sought in copyright infringement suits.

The defendant's amended answer, in addition to containing denials of plaintiff's two claims or causes of action, pleads several special defenses. The first special defense alleges that the complaint fails to state a claim on which relief can be granted; the second, that Miron and Grossman were not the original or first composers of the musical composition "Tzena" and that it was in the public domain for many years prior to their alleged composition; the third, that Miron and Grossman copied substantial portions of their composition from prior copyrighted works; the fourth, that Miron and Grossman waived all rights in the musical composition and dedicated it to the public.

For a first counterclaim defendant alleges that prior to June 22, 1950, Gordon Jenkins and Spencer Ross composed the musical composition "Tzena" and assigned it to the defendant, and that defendant used and sold the musical composition and promoted its sale and enjoyed unassailed ownership rights until plaintiff published its composition "Tzena"; that as a result of defendant's efforts the song became popular in the United States; that plaintiff's use will mislead the public; that plaintiff's publication is either the defendant's composition or is an unauthorized version thereof; that as a result plaintiff is improperly competing with defendant and has sent notices to persons in the music publishing business that plaintiff possesses the right to publish and deal in "Tzena"; that plaintiff has notified phonograph record publishers not to recognize defendant as the owner of the rights to "Tzena"; that all of plaintiff's acts and conduct have greatly damaged defendant.

Defendant's second counterclaim is based on defendant's registration of a copyright to the musical composition "Tzena". It alleges that prior to June 22, 1950, Gordon Jenkins and Spencer Ross composed the musical composition "Tzena"; that they assigned their rights to the composition to defendant; that defendant's composition contains a large amount of material wholly original with defendant's assignors; that defendant thereafter copyrighted the musical composition by depositing in the Copyright Office in Washington copies of defendant's composition and has published the composition since June 22, 1950, with

a notice of copyright thereon; that thereafter plaintiff published and sold its musical composition "Tzena"; that plaintiff's said musical composition infringed the defendant's copyright to defendant's damage, after notice of infringement sent by defendant to plaintiff.

The amended answer prays for an injunction, damages, an accounting of profits and the other relief usually sought by a claimant in a copyright infringement action.

Plaintiff's reply denies the allegations of the two counterclaims and asks their dismissal.

At the pre-trial conference before Judge Bondy defendant amended its amended answer to plead as an additional defense that plaintiff comes into court with "unclean hands" in that, it is alleged, the plaintiff first learned of the musical composition when it was broadcast extensively over the radio; that plaintiff became interested therein at the instance of plaintiff's attorney; that plaintiff conspired with plaintiff's attorney to enter into agreements with Grossman, Miron and YZAC for the purpose of asserting claims against defendant for the profits defendant earned as the result of defendant's exploitation of the song; that plaintiff's publications and sales of the musical composition were made in bad faith; and that plaintiff is barred from maintaining this action under the equitable doctrine of "unclean hands".

At the pre-trial hearing the parties agreed as to the genuineness of a number of exhibits without conceding their competency, relevancy or materiality.

The issues were formulated by the pre-trial judge in accordance with a stipulation of the parties, as follows:

"1. That the complaint fails to state a claim.

"2. That plaintiff is not the copyright proprietor of the musical composition and cannot maintain the present action for infringement.

"3. That the musical composition published by the plaintiff was and is in the Public Domain.

"4. That substantial portions of plaintiff's composition are copies or appropriations from prior works.

"5. That plaintiff's assignors and plaintiff dedicated the composition to the public and waived all rights in the composition.

"6. That plaintiff unfairly competed with the defendant.

"7. That the plaintiff infringed upon the defendant's copyright.

"8. That the plaintiff comes into Court with unclean hands."

* * * * * *

Issachar Miron, formerly Stefan Michrovsky, was born in Poland in 1919 and lived there until 1939, when he went to Palestine shortly before the start of World War II. Palestine was a British protectorate. He became a citizen of Palestine and a soldier in the British Army's Jewish Brigade. He was in the 2nd Company of the Palestinian Buffs. Michrovsky was a musician. He became ill in 1943 and left the Palestinian Army. Israel became a state in 1948. He was in the Israeli Army between 1948 and 1950.

His deposition in this case was taken in this country between December 7, 1950 and March 14, 1951. He testified that he wrote the song "Tzena" in the latter part of 1941, when he was with the Jewish troops of the British Army in Haifa, at the Peninsular Barracks. He described the occasion for writing the music as follows:

"I remember it as if it were today. I got some words that had been written by another soldier in the 22nd Company; the name of this soldier was Jehiel Hagges. The words were brought to me by a lance corporal, whose name is Blum. He showed me the words, and he asked me to compose the music as quickly as possible so that he could take them back when he returned to the

22nd Company. Blum was originally from the 2nd Company to which I belonged, but for a certain time he worked in the 22nd Company as an instructor. When I saw the words, I felt that I could compose a melody for them. I was very enthusiastic when I wrote this melody and I can say that I wrote the music, I might say so, with the blood of my heart."

Miron wrote the music in five or six hours, on the same day that he received the lyric from Hagges through Blum. The song was to be used in a celebration in the 22nd Company in which everyone was to participate. Miron went to the canteen gymnasium that evening and played the melody for the soldiers. It was a strong, gay melody, yet very simple so that the soldiers were able to sing it. Miron was a musician. He played several instruments, including the piano. A soldier named Hillel, a member of the battery, sang the song at the first performance.

When Miron wrote the music for "Tzena" he worked sitting on his bed, with the lyric before him and a pencil and paper. He consulted no musical works. He copied from no one. The melody was his own composition. He had written another melody entitled "Song of the Regiment", for which the lyric was written by Jakoff Margalith. The "Song of the Regiment" was later published in 1949 and 1950 by The Cultural Center of Histadruth.

Miron testified that he wrote out the song "Tzena" many times and had stencils of it made for use by military units. He did not have it printed. The song was also sung by youth organizations and choirs, and by special singers. On December 22, 1941 a well known singer, Goldstein, sang "Tzena" over the radio in Palestine. Miron taught the troops in Israel to sing the song. It was sung quite a lot from 1943 to 1945 by children and by others who had learned the song from the soldiers.

After Miron left the British Army in 1943 because of illness, he permitted the song "Tzena" to be sung over the Palestine radio and received certain payments therefor. Miron testified that Paulo Gorin made a recording for use by the Israel broadcasting service "Kol Israel", owned by the Israel government. For the Gorin recording Miron was paid by ACUM, the Palestine ASCAP. In 1945 Miron joined ACUM, which is the equivalent of the American ASCAP, and he became active in that organization in 1947. He registered the song "Tzena" with ACUM, and he received payments from ACUM.

The song "Tzena" was also used by Miron and Hagges in a musical comedy they wrote about 1947. It was performed at the Gachlilit theatre in Tel-Aviv in January 1947. The performances were advertised on bill posters and programs were printed (Ex. LL). The song "Tzena, Tzena, Habanot" was listed:— Music: I. Michrovsky; Lyric: Y. Hagges.

On November 12, 1947 Issachar Michrovsky (Miron) composer of music (called Party A) entered into an agreement (Ex. JJ) in Tel-Aviv, with David Zeitani, Zamir Art Co., Inc., registered in New York, U.S.A. (called Party B), by which Party A assigned to Party B the full right of recording in the Hebrew language for voice and piano, four compositions, "for distribution in this country (Palestine) and abroad". These four compositions did not include "Tzena", but it was added later. Party A declared that the right to record the compositions had not been theretofore assigned and that the songs would not be assigned to anyone for recording "except the Radio not for commercial purposes". For the aforementioned limited recording rights Party B agreed to pay Party A—20 Palestinian Pounds—"as a single payment which will not be considered as an advance payment on account of the percentage of royalties, but as a single payment which is given to composers of music". Party B undertook to pay to Party A, $7\frac{1}{2}$ percent "of the sale and distribution of the records", and to submit "a report of all the acts of sale and dis-

tribution of said compositions every 3 months". Party A agreed "to deliver the notes of the said compositions to a singer as desired by Party B and to Mrs. Zipora Michrovsky, pianist" on five days notice, apparently for recording purposes. The agreement was to run for a period of two years.

There was subjoined to the agreement (Ex. JJ) a paragraph reading as follows:—

"I hereby assign to the said Mr. David Zeitani 2 (two) other songs as follows: (1) the song Tzena Tzena—words by Hagges, (2) The Song of the Regiment—words by Yaaqov Margalit, in accordance with all the above said clauses together or any one of them separately. In consideration of the said songs the said Mr. David Zeitani delivers to me a sum of L.P. 10—(ten pounds) in accordance with clause 3 of this agreement (L.P. 5.—for each song—as advance payment). (Signed) Issachar Michrovsky—David Zeitani."

The agreement and the addendum were signed by David Zeitani and by Issachar Michrovsky (Miron). They were not signed by the corporation, Zamir Art Co., Inc.

Zamir (Palestine) Art Co. Inc. (Zeitani's corporation) sold to Zimra Corporation in New York on May 21, 1948, "the chattels, equipment and assets" set forth in a Schedule A annexed to the agreement of sale. (Ex. 23) The schedule included 14 mother stampers, 6 New Recordings, 1864 records (in stock), 19 stampers and "on consignment 386 Records (and) 62 Album with 186 Records". At the bottom of the schedule appears the following: "Including all copyrights of recordings and contracts". A rider attached to Schedule A stated:—"With reference to the recordings specified in Schedule A, it is understood and agreed that the transfer and sale thereof is intended to include all of the copyright interests therein whether the same be in the individual name of David Zeitani or in the corporate name of Zamir Palestine Art Company Inc."

In an affidavit which he executed at the time of the sale, Zeitani represented that he was President of Zamir Palestine Art Co. Inc. and the owner and holder of all of its issued stock; that as such owner he had been authorized by the Board of Directors of the corporation to execute the bill of sale; that Zamir Palestine Art Co. Inc. was the sole and absolute owner of the property described in said bill of sale; that the property was free and clear of all liens and debts; and that the corporation had no creditors. On the list (Ex. 24A) of 16 new masters and recordings was "Tzena, Tzena". They were sold at the rate of $100 for each song—a total of $1,600; including copyrights and contracts. (Exs. 24 & 24A). The Zimra Corporation made two checks payable to David Zeitani; one dated May 18, 1948 for $1,400 (Ex. 25B) and the other (Ex. 25A) for $200, dated May 21, 1948.

The Zimra Corporation was organized in New York pursuant to an agreement (Ex. 27) between David Zeitani, Menachem Kolari and Solomon Goldman, dated May 12, 1948, wherein each agreed to subscribe and pay for twelve shares of stock at $100 each. Goldman agreed to loan the corporation $2,000 for ninety days. Zeitani was to be President, Kolari, Vice-President and Goldman, Secretary and Treasurer. Schedule A annexed to the contract (Ex. 27) contains a list of twelve Original Recordings and six New Recordings. The "Tzena" composition does not appear on this list.

Michrovsky (Miron) testified, by deposition taken here, that he gave Zamir, a firm in Palestine, the permission to make phonograph records in 1947. The representative of Zamir was Zeitani, who lives in Tel-Aviv. Zeitani made the matrix, Sara Jaaray singing the song and Miron's wife (Tsipora) was paid for playing the piano. The recording was made in November 1947. Miron testified on deposition that he was present when the record was made and that he received money only for being present there—for this record (Tzena) five Palestinian pounds.

Miron wrote Zeitani in January 1949 that he (Zeitani) had received permission to print the song only for the Zamir Company, in Hebrew, with Sara Jaaray (the singer). Zeitani answered (Ex. KK) that he had assigned the recordings to Zimra; and Miron in turn answered that he, Zeitani, did not have permission to transfer them to another company. Miron also wrote the Zimra corporation that it had no right to make the records. Miron testified that "Tzena" was never printed in Palestine or Israel and that the only one in America to whom Miron gave permission to print the song was Mills Music, Inc.

Zeitani testified, through deposition, that Michrovsky (Miron) made a contract with him about "Tzena"; that Michrovsky sold his exclusive rights to him and that Michrovsky got money for it; that he was paid 20 pounds and an additional 10 pounds "for everything"; that the acetate recording of "Tzena" was made in Tel-Aviv; that from the acetate they make a master record, from which a stamper was made in this country, and then came the printing of the records here; that the master record was brought to this country March 24, 1948, and a company was organized on May 13th and the first album of records was ready by June 1948. The album was advertised in Jewish publications.

Records were pressed in the United States from the "Tzena" matrix and from various others, and the album of records was sold under the title of "Haganah Sings". About a thousand copies were sold here; none in Israel. The Zimra records pressed and distributed in the United States, from the recordings made in Palestine of the song "Tzena", contain the statement, "Music by Michrovsky—Words by Chagiz—Sung by Sara Jaaray" (Ex. 13) The Zimra corporation soon went out of business. Michrovsky received a payment of five Palestinian pounds for his "Tzena" composition when he made the agreement with Zeitani, but he received none of the royalties promised in the agreement. The "Tzena" record manufactured and

sold by the Zimra Corporation, reproduced the so-called second part of Michrovsky's music but not the bass or first part. Michrovsky protested against the sale of the records by the Zimra Corporation in the beginning of 1949, when he first learned of their publication. It does not appear that the Zimra record of "Tzena" (Ex. 13) made any reference to any copyright, or that either the Zimra Corporation or Zeitani did anything to protect the Miron composition by having his music copyrighted before selling the records. Zeitani was supposed to know what should be done. He pretended to be the expert in the record business. His two associates in the Zimra Corporation were engaged in another business.

The written contract between Michrovsky (Miron) and David Zeitani, Zamir Art Co., Inc., (Ex. JJ) did not mention copyrights. But Miron testified, by deposition, that Zeitani promised him that he would make the application here for copyright and that he would protect all of Miron's rights and there is nothing in the record of the trial to deny that claim. It would be a natural request on Miron's part. Of course, it should have been put in the written agreement, but Michrovsky relied on the promise of his compatriot in Tel-Aviv, who proved to be untrustworthy both to Michrovsky and to his new associates.

Plaintiff's attorneys argue that Michrovsky's contract (Ex. JJ) was with Zeitani and his Zamir company and not with the Zimra Corporation to which Zeitani later transferred all his rights under the contract; that Zimra had no permission from Michrovsky to manufacture and sell the phonograph records of the song "Tzena"; and that Zimra's acts were not authorized by Michrovsky. The contract contained no express right in Zeitani to assign his rights under the contract. Nor did it contain any prohibition against its assignment. The contract is silent on that. The question is presented, whether this was the kind or type of contract which, by its very nature, was unassignable. I believe

it was. The full price was not paid on the signing of the contract. The down payment was nominal. The composer was to be paid a percentage of the proceeds of the sales of the records. The contract was for a license, limited in its scope. The license agreement involved "a relationship of personal credit and confidence." Paige v. Faure, 229 N.Y. 114, 127 N.E. 898, 899, 10 A.L.R. 649. Such contracts are not assignable without an express provision to that effect. This is particularly true of contracts between authors or proprietors of literary works and producers. (Frolich and Schwartz, "The Law of Motion Pictures and The Theatre" at p. 67.) "A license to use a copyrighted subject in a particular way, being a privilege personal to the licensee, is not assignable unless it contains words showing that it was intended to be assigned." Ball on Copyright, p. 531. See, also M. Witmark & Sons v. Pastime Amusement Co., D.C., 298 F. 470 at pages 474–475, affirmed, 4 Cir., 2 F.2d 1020; and In re D. H. McBride & Co., D.C., 132 F. 285. The case at bar involved a personal and limited license. It was not assignable. The acts of the Zimra Corporation in manufacturing and selling the "Tzena" record were not authorized by Michrovsky, the composer of "Tzena" and cannot be charged to him. National Comics Publications v. Fawcett Publications, 2 Cir., 191 F.2d 594, 600–601, citing American Press Ass'n v. Daily Story Pub. Co., 7 Cir., 120 F. 766.

I will next take up the YZAC (Young Zionist Actions Committee) publication of Michrovsky's music of "Tzena", with a third part or refrain, by Julius Grossman. Mr. Grossman was an Assistant Music Director of the Jewish Educational Committee for about eight years. He heard Michrovsky's two parts of the song "Tzena" early in 1946 from a young lady, Muriel Goldberg, who was teaching at the Brooklyn Jewish Center. She had heard it from her Zionist friends. Grossman was associated with several choral groups and he wrote the so-called third part of "Tzena" about November 1946, to give the melody an air of completeness. He used "Tzena" as a closing number for the concerts of his choral groups. He testified that he wrote out the notes of the first two parts from memory at the time he wrote the third part. He did not then know who was the composer of the first two parts. Grossman first heard from Miron after the summer of 1950, during the popularity of the song "Tzena", in a letter dated September 24, 1950. He first saw Miron (Michrovsky) after Miron came to this country in November, 1950.

Grossman did not have the "Tzena" song printed. But he had a transparent photo offset made (Ex. KKKK) which he used instead of a regular mimeograph. He made about 150 or 200 copies by this process. It did not look like type. It bore the title "Tsena" with the notation "arr. Julius Grossman". It had the appearance of a musical manuscript, with a lyric of Hebrew words in English spelling, also in script. Grossman never sold any of the sheets (Ex. KKKK) containing the song "Tsena". He handed them out to members of his choral groups so that they could follow the music; but they could take the copies home and sing the songs other than in Grossman's performances. The song was sung by many groups with which Grossman came in contact, after he wrote the third part.

Mr. Silbermintz, who compiled the songs for YZAC's book "Songs of Israel", was present at the performance of one of Grossman's groups and heard Grossman's third part for the first time. He told Grossman that he was going to include it in the collection "Songs of Israel" and put Grossman's name down as the composer of the third part and Grossman made no objection at that time.

The song "Tzena, Tzena" appears on page 160 of the book "Songs of Israel", published by YZAC in June 1949. In the place reserved for the composer's name the following appears:—"Michrovsky; Part 3—J. Grossman". The index at the end of the book lists Michrovsky as the composer. The song

is not listed as a "folksong", although there are nineteen songs thus listed in the index. If the compiler did not know the composer's name and did not consider a song a folksong, a blank space was left in the composer's column of the index.

The copyright notice appearing on page 2 of "Songs of Israel" states:

"All songs by N. Nardi in this book are copyrighted by the composer; all rights are reserved; no song may be reprinted or arranged in any form whatsoever without written permission of the composer.

"All the other songs are copyrighted by Israelcap. No song may be reproduced, reprinted, played or performed for profit without permission of the copyright owner.

"Copyright 1949 by Young Zionist Actions Committee."

The notice appears to be clear enough. It advised that all songs, other than those by N. Nardi, "are copyrighted by Israelcap", which allegedly was represented in this country by a Mr. Gorochov. Actually Israelcap copyrighted none of the songs.

The Young Zionist Actions Committee filed an application in the Copyright Office on July 5, 1949 to copyright the compilation entitled "Songs of Israel". A certificate of registration was issued (Ex. V). It names Seymour Silbermintz as author of the "compilation" and Leah S. Koenig as the author of the "Translation, transliteration". It does not mention the names of the composers and authors; nor does it mention "Israelcap". It gives June 22, 1949, as the date of the first public sale of the book "Songs of Israel".

A man named Gorochov (also known as Admon) claimed to represent "Israelcap" in this country, at the time the "Songs of Israel" book was being compiled by YZAC. Mr. Silbermintz, a musician and teacher of music, edited the book "Songs of Israel" for YZAC. Silbermintz had heard "Tzena", including the third part, sung by a chorus conducted by Grossman at the Hotel Commodore about the middle of 1947. Grossman gave Silbermintz oral permission to publish the song in the "Songs of Israel". When Gorochov was in this country, Silbermintz asked him about "Tzena" and Gorochov told him Michrovsky was its composer. Gorochov showed no power of attorney from Michrovsky.

It is defendant's contention that Michrovsky was a member of Israelcap and as such was bound by whatever Gorochov did. Plaintiff contends that there was no organization known as Israelcap and that Michrovsky never gave any power of attorney to Gorochov. YZAC made two payments, by checks payable to Israelcap, $200 on March 6, 1950 and $400 on June 15, 1950. (Exs. LLLL and MMMM) They were not payments for the use of any specified compositions. The checks bear a typed endorsement "Israelcap", beneath which appears a stamped endorsement:—"Pay to the order of the Amalgamated Bank of N. Y.—American Fund for Israel Institutions, Inc." That "Fund" had some relationship with a Composers Association of Israel. (Note the address on the Ex. EEE). Who got the money eventually, does not appear

Michrovsky, according to his deposition, was a member in 1945 and a director in 1947 of an Israel Ascap society, which was later known as ACUM, Ltd. Gorochov was an officer of ACUM. The authority resting in that Society, from its members, is alleged to be similar to that given ASCAP in this country, and related merely to licensing performances, something very different from authorizing the publication of a member's compositions. If any authority was possessed by Gorochov in respect to Michrovsky's musical composition "Tzena" by reason of Michrovsky's membership in ACUM (or Israelcap) it has not been shown that that authority embraced any right to permit YZAC to publish Michrovsky's music in the book "Songs of Israel". Michrovsky in his deposition testified that he did not give Gorochov such au-

thority. If Gorochov's actions indicated that he believed that he had that authority, that would not suffice to prove that he possessed it. The fact of agency cannot be shown by the declarations or conduct of the agent. Edwards v. Dooley, 120 N.Y. 540, 551, 24 N.E. 827; Herschowitz v. Kleinman, 227 App.Div. 62, 236 N.Y.S. 669; Wigmore, § 1078. Further, there is no proof that Michrovsky ever ratified anything Gorochov may have assumed to do in relation to Michrovsky's composition "Tzena" or that Michrovsky ever received any part of the money ($600.00) paid to Israelcap by YZAC. I have concluded that YZAC's publication of Michrovsky's musical composition "Tzena" in "Songs of Israel" was not authorized by Michrovsky.

 Grossman's own use of his third part of the "Tzena" in the choral performances which he directed would not constitute a "publication" thereof. It was a limited use, and the mimeographed copy of the composition which he prepared for the chorus did not destroy the common law copyright which he, as the composer, possessed in his said third part. Nor was the use he permitted other choral societies to make of the mimeographed copies a "publication" such as would put his composition in the public domain and constitute a waiver of his right to obtain a statutory copyright. Patterson v. Century Productions, 2 Cir., 93 F.2d 489.

Mr. Grossman had no agreement as to any payments from YZAC for the use of his third part of "Tzena". But he knew it was to be included in the book. They asked his permission to use it and he gave it. The book was sold quite generally, after publication. Some of the organizations Mr. Grossman was associated with, bought copies of the book.

The defendant also attacks the assignment of "Tzena" to Grossman by YZAC because of the alleged lack of authority in the officers of YZAC to execute the assignment. Grossman's permission to publish his third part of "Tzena" in the book compilation "Songs of Israel" was without consideration and was given as an accommodation to YZAC in furtherance of its general objectives. YZAC was interested in the compilation "Songs of Israel" as an aid to its general objectives. It may rightly be assumed that YZAC was interested also in protecting, and not abandoning, the rights of the composers and authors who contributed to YZAC's compilation. But it failed to do so.

The officers of YZAC who were authorized to negotiate with Grossman and others for permission to publish, would have the authority also to carry out any proper condition, even if only implied, that the composer's rights be protected. Their later assignment to Grossman would, as to his third part, be within the scope of their authority, without any special action of the Executive Board of the Committee. The acts of the officers have never been disavowed by YZAC's executive committee. What they did in executing the assignment to Grossman was the fair thing to do. It deprived no member of YZAC of anything to which it was rightfully entitled. Finally defendant argues that the Young Zionist Actions Committee was not a "person" entitled to claim a copyright under the Copyright Law.

Mr. Reichstein testified for defendant as to the organization and functioning of YZAC. He had been connected with the Young Zionist Actions Committee from 1943 to 1951, in various capacities. It "is the political coordinating arm of the Zionist youth organizations in America". It acted for eleven constituent organizations (Ex. C–a). "Songs of Israel" was the only volume of songs YZAC published. It was not a corporation or a partnership. It was an unincorporated association. The Executive Board had twenty-five members, a Chairman, a Secretary; and kept minutes of its meetings. The Board, composed of representatives from the constituent organizations, decided its policy and directed its action. Mr. Reichstein was not involved in its busi-

ness management—not an active head—but Mrs. Koenig was. The organization had a bank account. Mr. Reichstein and another could sign checks. The organization had an attorney "who gave legal guidance with regard to copyright and reprint matters". It had a national organization manual (Ex. QQQ), which states the history, purposes, and methods of operation of the Young Zionists Actions Committee, and contains suggestions for the guidance of local organizations.

Under Section 9 of the Copyright Law a proprietor or publisher may file for a copyright. Defendant cites an old case, Haas v. Leo Feist, Inc., D.C., 234 F. 105, which has no application.

Article 3 of the New York General Associations Law, McK.Consol.Laws, c. 29, recognizes the right of unincorporated associations to hold property and provides for actions or proceedings by or against them.

In Martin v. Curran, 303 N.Y. 276 at page 280, 101 N.E.2d 683, 685, the New York Court of Appeals held that:— "A voluntary, unincorporated membership association is neither a partnership nor a corporation. It is not an artificial person, and has no existence independent of its members. Ostrom v. Greene, 161 N.Y. 353, 361, 55 N.E. 919, 921; see Niven v. Spickerman & Stever, 12 Johns, N.Y., 401. No agency of one member for another is implied. McCabe v. Goodfellow, 133 N.Y. 89, 95, 30 N.E. 728, 729, 17 L.R.A. 204."

 Although an unincorporated association is not a legal entity separate and apart from the members who compose it [See note 7 to § 2 of McKinney's Edition of the N.Y. General Associations Law] nevertheless, since it can hold property, it can own a copyrightable manuscript and may apply to register it in the Copyright Office, upon compliance with the provisions of the Copyright Law. The right to obtain a statutory copyright would be an incident of ownership of the copyrightable manuscript, necessary for its proper exploitation. Gerlach-Barklow Co. v. Morris & Bendien, 2 Cir., 23 F.2d 159. The inclusion of an author's work in a compilation gives the compiler no copyright thereof. It does not forfeit the author's registered copyright or put his unpublished work in the public domain, if he did not authorize its publication. See T. 17 U.S.C.A. § 7; Hartfield v. Peterson, 2 Cir., 91 F.2d 998.

 Unfortunately, Grossman did authorize the publication of his third part of "Tzena" in the YZAC book "Songs of Israel." YZAC's copyright related only to a compilation. YZAC obtained no copyright of any part of the "Tzena" composition. By authorizing the publication of his third part of "Tzena" without an appropriate notice of copyright, Grossman lost whatever rights he had in his third part of "Tzena". The assignment from YZAC does not help him.

Plaintiff's briefs after trial make it clear that plaintiff is not basing its case solely on whatever rights YZAC had in the song "Tzena", which YZAC assigned to Grossman on June 16, 1950 (Ex. U) and which he in turn assigned to plaintiff on June 22, 1950 (Ex. O).

Plaintiff's publication (Ex. 5) combined the Michrovsky music of Tzena", first and second parts, and the Grossman music, the third part, together with an English lyric by Mitchell Parish. For its claim of copyright infringement by defendant, plaintiff relies upon its assignment from Michrovsky dated June 22, 1950, of all of Michrovsky's rights, copyrights and claims for infringement and its own subsequent copyright.

A book "The Songs We Sing", compiled by Harry Coopersmith and published by the United Jewish Synagogues included Miron's (Michrovsky's) "Tzena", but did not include the third part by Grossman. Coopersmith was the musical director for the Jewish Education Committee. Grossman became one of his assistants. The book "The Songs We Sing" was published February 20, 1950. Coopersmith first heard "Tzena" sung at a convention of

Jewish educators at Atlantic City, while he was working on his book. He also heard "Tzena" in 1948 or 1949 in various schools and camps. He got a mimeographed copy of the song from a Mr. Resnick, the music director of the Bureau of Jewish Education of Chicago, and Coopersmith used it in his book. He also testified that he probably had heard or had seen Michrovsky's name in connection with the song; he may have seen it in Silbermintz's book (Songs of Israel) or he got it from a notice he received from Michrovsky in November 1949. (Ex. NNNN)

Coopersmith testified that he received authorization to publish Israeli songs from a man named Gorochov, who claimed to have authority from Israel composers. Coopersmith made a letter agreement with Gorochov (Ex. OOOO) on July 1, 1948, for permission to use the melodies in a list of songs "established by us", i. e. by Coopersmith and Gorochov. The letter agreement was signed by I. Gorochov and beneath his signature appeared in type "I. Gorochov, President Palestine Composers and Authors Association". No list was annexed to the letter.

Coopersmith testified that he showed Gorochov a list of songs, of Israeli origin, which he was planning to incorporate in the book; that "Tzena" was one of the songs submitted to Gorochov, without the author's name; and that Gorochov showed Coopersmith a power of attorney to act for the Israel composers, but no specific names were attached thereto. It appears (according to Gorochov) (Ex. 38) that the name of Michrovsky was not mentioned on the list of songs which Coopersmith says he submitted to Gorochov, and (according to Coopersmith) Michrovsky's name was not on the general power of attorney which Gorochov showed Coopersmith. The song "Tzena" was on the list of songs shown Gorochov according to Coopersmith, but the list was not produced at the trial. Coopersmith said Gorochov had the list and Gorochov's

deposition was not taken. It would seem likely that in a deal relating to a list of songs, both parties to the deal would have some memorandum showing the songs covered by the agreement.

Michrovsky's letter to Kopersmith (Coopersmith) dated November 21, 1949 (Ex. NNNN) advised him that the publication of the "Tsena" song by Coopersmith was without Michrovsky's knowledge or permission; that Michrovsky intended to get by all legal means his fees and indemnity; and that if Coopersmith was ready for "a final arrangement of that matter", that Mr. E. Olshansky, who had left for the States, was empowered to deal with Coopersmith. After this litigation was started, Gorochov wrote Coopersmith on May 7, 1951 (Ex. 38) that Michrovsky's name was not on the list of members of the organization, ACUM, Ltd., who signed the power of attorney to Gorochov, which Gorochov showed Coopersmith at the time the agreement of July 1, 1948, (Ex. OOOO), was signed by "I. Gorochov, President Palestine Composers and Authors Association". The letterhead of Exhibit 38 is "ACUM Ltd." under which appears in French "Societe Des Auteurs, Compositeurs Et Éditeurs En Israel". In that exhibit Gorochov refers to the "power of attorney signed by members of our Organisation" which he showed Coopersmith, evidently at the time Exhibit OOOO dated July 1, 1948, was signed. The Palestine Composers and Authors Association must have been either a predecessor of or another name by which ACUM was known in July 1948. At the time Exhibit 38 was written May 7, 1951, Palestine had become Israel.

A certificate of registration of claim to copyright of the book "The Songs We Sing" was issued March 21, 1950, on an application alleging publication February 20, 1950. Coopersmith transferred whatever rights he had as Editor, to the United Synagogues of America which filed the application for the copyright of the book. The book was pub-

lished after the receipt of Michrovsky's warning letter of November 21, 1949. (Ex. NNNN)

Among the "acknowledgments" set forth at the beginning of the book "The Songs We Sing", is one to "The Palestine Composers and Authors Association through their representative I. Gorochov for the use of those melodies and poems created in Israel in the past few decades". At the end of the acknowledgments there appears the following:— "The copyrights on compositions and arrangements prepared especially for this book are retained by the composers and arrangers and may not be reprinted in any form without their permission". In the list of contents, under the heading "Songs of Israel—Labor" appears the following: "Tzena. Music by I. Miron; arranged by H. C.; Words by Y. Hagiz." "H. C." is Harry Coopersmith. The music of "Tzena" published in "The Songs We Sing" at p. 321 is a copy of Miron's composition, both parts, with the exception of two new notes. It did not contain the third part by Grossman.

Mr. Grossman who wrote the third part to "Tzena" had an office with Mr. Coopersmith and was his assistant. Grossman never had any discussion with Gorochov, who claimed to represent Israelcap, but he saw him at Coopersmith's office. Grossman saw the Binder arrangement of "Tzena" (Ex. 10) published by ZOA. He could not say when, in relation to the time he wrote the third part. Grossman had nothing to do with the Binder-ZOA publication of "Tzena" which was copyrighted by ZOA March 1, 1948 and contained only Michrovsky's music.

Mr. Coopersmith testified that ACUM means the Palestinian Composers and Authors Association. He did not know the functions of ACUM.

About the middle of July 1950, Coopersmith received a letter from plaintiff's attorneys, which enclosed a letter (Ex. CC) which they requested Coopersmith to sign. He signed it. The letter (Ex. CC) reads as follows:

"Mills Music, Inc.,
"1619 Broadway
"New York 19, N. Y.
"Gentlemen:

"At the request of your attorneys, Messrs. Zissu & Marcus, I hereby confirm to you that I made the arrangement of the musical composition Tsena, Tsena published by the United Synagogues of America in its book 'Songs We Sing'. I had heard the song performed and I used it and made the arrangement of it under the impression that it was in the public domain. I was unaware that it was a work protected by or entitled to protection of copyright.

"Having now been informed that the song is not in the public domain, I acknowledge that my arrangement was not authorized by its owner or proprietor and regret any confusion my arrangement may have caused.

"Very truly yours,
"Harry Coopersmith"

The letter says nothing about the authorship credit given to Miron in the book "The Songs We Sing". (Ex. BB at p. XVII).

The form of agreement Michrovsky had with ACUM Co. Ltd. and the power of attorney contained therein (Ex. XX–1) was that signed by all members after ACUM was reorganized in 1949 or 1950. In the opening paragraph it transfers to ACUM all the rights of performance of the composer's works. Sub-paragraphs (a), (b), (c) and (d) concern the licensing of the performance rights of his works by ACUM, the collection of amounts due on the licenses and the collection of damages for any performance without a license and the right to institute claims against all who violate the performance rights.

Paragraphs (e) and (f) provide:

"e) to represent me and to defend my rights in connection with the printing of my works, against plagiarism or publishing in any form and in any publication in any place, and to sue for such rights or to collect money for the above in royalties, fines or damages."

"f) to represent me and defend my rights in all matters in connection with the filming of my works, or recording of my works or their performance on records by any institution, company, radio station or individual, or any other body, and empower it to reach an agreement in my name and stead, or to collect monies in my stead in connection with the recordings of my works, or their performance through records."

A comparison of paragraphs (e) and (f) shows that as to any printing of the composer's work, ACUM was authorized by paragraph (e) only to bring suit for plagiarism but not to enter into any agreement granting any one permission to print the composer's work. Paragraph (f) went beyond (e) in that it gave authority to ACUM to reach an agreement in connection with any recording of the author's works on records or films, or their performance through records.

Paragraph (g) relates to the use of his works by theatres or private theatrical groups. The concluding paragraph (h) states:

"h) to represent me and in general take all the necessary steps as the management sees fit, for the protection and reservation of the performance rights or performance of my works in all ways and means that exist."

A reading of the ACUM agreement confirms Michrovsky's statement that he never authorized Gorochov to permit any one to print his musical composition "Tzena".

The Zionist Organization of America (ZOA) on March 1, 1948, filed an application (Ex. DDD) for the registration of a copyright of an arrangement of "Tsena, Tsena", which was described as a Jewish Brigade love song, a folksong. The arranger was Prof. Abraham Wolf Binder. He was called as a witness by plaintiff and testified that he wrote the notes of the score for the ZOA publication of "Tsena", as a young lady sang it for him. She knew the tune and was connected with the Educational Department of ZOA. He did not know the name of the composer at the time; it might have been a folksong.

The first date of sale of the ZOA pamphlet was stated to be February 11, 1948, in ZOA's application for a copyright of the Binder "arrangement". The musical composition (Ex. 10) was published by the Educational Department of ZOA and bore the notice "Copyright 1948 by Zionist Organization of America".

On October 9, 1950, Carl Alpert, Director of the Educational Department, wrote to Judith S. Gottlieb c/o of the American Fund for Israel Institutions, at Tel-Aviv, Israel, in respect to her relationship with the Composers Association of Israel (Ex. EEE). He informed her that ZOA, in this country, had published and copyrighted special arrangements of Israel Songs, and that some of them had become popular. He then stated:

"There has been much question about one of these songs of late, 'Tsena Tsena', the composer of which is Michrovsky. No doubt you are familiar with the complicated legal tangle involving this song, which has now become a popular hit in America. Several music publishing concerns are mutually suing each other for infringement of copyright, oblivious of the fact that the ZOA holds the original and basic copyright in this country. While we are prepared to take necessary action when the proper time comes, we are also interested, as a Zionist institution, in preserving the rights of the composer, and solicit your good offices in bringing about an understanding whereby we may represent

his interests under the terms of our copyright which is dated 1948."

In answer to his letter, Mr. Alpert received a letter dated November 30, 1950 (Ex. SS) from I. Admon (Gorochov) as President of ACUM Ltd. (Society of Authors, Composers and Publishers in Israel). Gorochov answered for Miss Gottlieb. Mr. Alpert was thanked for having obtained copyright on the publications although made without their (ACUM's) permission; and he was further advised that he would be asked "to assign the copyright to some other body as and when we so require". He was told that Michrovsky was then in New York and had been advised to contact Alpert about his song "Tzena". Prior thereto, and on November 21, 1949, Michrovsky had sent "Director Karl Alpert" from Tel-Aviv, a notice (Ex. WWW), similar to that which Michrovsky had sent to Coopersmith (Ex. NNNN), stating that he, Alpert, should get in touch with Mr. Olshansky about Alpert's publication of "Tzena" without Michrovsky's permission.

Upon the receipt of Admon's (Gorochov's) letter Alpert answered on December 11, 1950, that Mrs. Stern of his office, had tried to contact him (Gorochov) when he was in the United States, but that he was not always available; that ZOA had sought to obtain all information possible regarding compositions which they planned to publish and rather than withhold this music from the public they proceeded with folk versions, which had reached them from Israel. On June 23, 1950, ZOA, through Mr. Alpert, had notified Decca Records that ZOA held the original American copyright of the musical composition entitled "Tzena Tzena", dated March 1, 1948. Decca in turn notified the defendant, Cromwell Music Corp. (Ex. IIIII), which had licensed Decca to make and sell a record of the "Tzena" music, that ZOA had made claim to the music.

The proof in this case shows that neither ZOA nor Mr. Alpert was ever authorized by Michrovsky, or by any one acting in his behalf, to publish the Bind-er arrangement of Michrovsky's composition "Tzena".

People's Artist, Inc., issued in May or June 1950, a "throw sheet" or pamphlet entitled "Sing Out" (Ex. 15), which contained Michrovsky's and Grossman's parts of "Tzena", with authorship credits to them. The sheet contained a notice as follows: "Copyright Israelcap. Used by permission of American Fund for Israel Institutions". The use of "Tzena" in the "throw sheet" was not authorized by either Michrovsky or Grossman.

A number of recordings of "Tzena" were made in this country during the height of its popularity in 1950. The defendant, Cromwell, through its agent, Harry Fox, issued licenses to eight companies to make recordings in the period of June to September 1950. The Banner record (Ex. 12) was published without any formal authorization by any one and there is a suit pending against that company brought by plaintiff. Some of the companies, to protect themselves, obtained licenses from the plaintiff also. Plaintiff notified the recording companies of its claim to the Michrovsky music. There was also a Stinson or Stimson recording of "Tzena" made about 1949. They received a notice of infringement from Michrovsky when he heard of their record.

Another invasion of Michrovsky's rights as the composer of "Tzena" was the unauthorized use of the song in a documentary sound-track film produced for Zionist or Jewish educational purposes. When Michrovsky heard of it he sent a notice of infringement under date of November 21, 1949, to the United Producers—the Hebrew Art Committee.

The manufacture and sale of phonograph records in this country by a person or corporation duly authorized by Miron would have constituted a publication of his composition. I believe that it would be a publication, capable of destroying his common law copyright. If he had obtained a statutory copyright prior to the manufacture and sale of the phonograph records, the sale of the records would have no effect on Miron's

rights, which then would be based on the copyright statute. The weight of legal authority seems to support that view. RCA Mfg. Co. v. Whiteman, 2 Cir., 114 F.2d 86. Shapiro Bernstein & Co. v. Miracle Record Co., D.C., 91 F. Supp. 473. But there was no such authorized manufacture and sale of records of "Tzena" prior to Miron's agreement with and assignment to plaintiff through Miron's agent Olshansky.

■■■■■ The singing of an author's composition on a radio broadcast would not be a "publication". The making of a single transcription of a musical composition for use by a radio station in broadcasting, would not constitute a "publication" because the transcription would be made for a limited specific purpose, not for the production of other records for sale to the general public.

■■■■■ An author or composer of an unpublished work does not lose his right to obtain a statutory copyright by reason of the unauthorized publication of his work. Nor does he lose that right if a person with whom he contracts for the publication of his work breaches a term or condition of his contract requiring him to comply with the Copyright Law. Nor does he forfeit a statutory copyright already obtained by the author or composer, if the publisher breaches a provision of his contract requiring him to affix the appropriate notice of copyright to each copy of the published work. National Comics Pub., Inc. v. Fawcett Pub., Inc., 2 Cir., 191 F.2d 594 at page 601.

■■■■ As stated by Judge Learned Hand in the Fawcett case, the abandonment of an author's literary property in the work before it is published, or of his statutory copyright after he has done so, must be "by some overt act which manifests his purpose to surrender his rights in the 'work,' and to allow the public to copy it." Judge Hand also distinguished and defined the terms "abandonment" and "forfeiture". He declared the use of the term "dedication" to describe the legal effect of a publication of a copyrightable work without having obtained a statutory copyright, "is a misnomer, for 'dedication,' like 'abandonment,' presupposes an intentional surrender, which is in no sense necessary to the 'forfeiture' of a copyright. An author, whose work is 'forfeited,' need have had no such purpose, and ordinarily does not * * * and when it was settled that he did, (forfeit his rights by publication) the result was a consequence, imposed invitum upon him because of his failure to comply with the prescribed formalities." At page 598.

■■■■ The record contains no proof that Miron intended to abandon his literary property in the composition "Tzena" at any time. The proof is to the contrary. In Palestine and Israel, when the work was performed commercially, Miron collected performance fees. After Miron joined ACUM, the equivalent to ASCAP in the United States, ACUM collected for Miron all broadcast performance fees. The work was never printed or published in Palestine or Israeli. The limited noncommercial use allowed to soldiers, youth, education and choral groups, through stencil copies, would not constitute a publication under our law. Patterson v. Century Productions, 2 Cir., 93 F.2d 489. The special transcription for radio broadcast for Kol Israel was not a publication. The attitude of Miron towards this composition at all times was that it was his property and when he heard of the unauthorized publication of his work in the United States by certain Zionist groups and others he sent them proper notices of the violation of his rights in the composition.

The name of Olshansky (Efraim) came up quite often during the trial, although his deposition was not taken and he did not testify. He held a power of attorney from Michrovsky (Miron) executed June 15, 1950 (Part of Ex. P). He came here on business from Tel-Aviv, where he was a barrister. On June 19, 1950 he executed an agreement with Mills Music, Inc. (Ex. A) transferring to it all of Michrovsky's rights and copyrights in respect to "Tzena", in consideration of a

down payment and certain royalties. He was to get a specific written confirmation of his general power to act for Michrovsky, which he got (Part of Ex. P); and agreed to transfer all of Michrovsky's right to "Tzena", including claims for infringement, which he did on June 22, 1950. (Ex. P) A John Olshansky, as the attorney in fact for Yehiel Hagges, who composed the Hebrew lyric for which Michrovsky wrote the music "Tzena", executed in September, 1950, an agreement (Ex. H) with Mills Music. On October 16, 1950, John Olshansky executed an assignment (Ex. WWWW) to Mills Music of all of Hagges's rights in and to the song "Tzena".

The power of attorney from Miron to Olshansky is dated June 15, 1950. It is general in its terms. Paragraphs 4, 5 and 8 so indicate.[1] Although Miron's affidavit of authorship of the melody bears the same date and mentions Cromwell Music Inc. as the concern, which he was agreeing should publish the song, the affidavit was never delivered to Cromwell, nor was a special power of attorney (Ex. YY) delivered to Cromwell. Both were returned to Miron by Olshansky, because the terms Cromwell offered were substandard and were not acceptable. No deal was ever consummated with Cromwell. The general terms of the power of attorney (Part of Ex. P) were not affected by the limited applicability of the Miron affidavit (Ex. YY). Under the general power of attorney, Olshansky made a deal with Mills Music, Inc. on June 19, 1950 (Ex. A) on standard terms, better than those offered by Cromwell.

 The formal assignment of all rights and copyrights to the musical composition "Tzena Tzena" was executed by Olshansky in the name of Miron on June 22, 1950, pursuant to the general power of attorney dated June 15, 1950. The said assignment and power of attorney were filed and recorded in the Copyright Office at Washington on August 2, 1950. (Ex. P) But the Mills Music Co. already possessed both papers at the time Mills published the "Tzena" composition with notice of copyright, and at the time Mills applied for copyright registration. The acts and conduct of the defendant, Cromwell Music Co., were in no way affected by the filing by Mills of the assignment and power of attorney after the Mills application for registration had already been filed. The defendant's attorney claims that this alleged technical defect in the registration is sufficient to destroy the Mills copyright. I believe that it has no bearing on the case. Washingtonian Co. v. Pearson, 306 U.S. 30 at page 41, 59 S.Ct. 397, 83 L.Ed. 470; Baron v. Leo Feist, Inc., D.C., 78 F.Supp. 686 at page 692; Mazer v. Stein, 347 U.S. 201 at page 219.

 Howard Richmond is the general manager of the defendant corporation, Cromwell Music, Inc. The infringement by the defendant was deliberate. Its own claim to the copyright of "Tzena" was conceived in fraud and was presented to the music publishing and recording world in the double fraud of concealing the name of the real composer of "Tzena" and asserting a claim of authorship in the name of a fictitious person, Spencer Ross, under which the corporation's general manager, Howard Richmond, was masquerading.

Before the defendant published its edition of "Tzena", Richmond knew who its

---

[1]. "4. To assign to any person firm or corporation the said copyright (with such limitations as to time or area as he may think fit) or such several rights of reproduction performance or publication and in any such agreement to reserve such several rights as he may think fit and in all or any such cases to impose such conditions as to the consideration for such assignment or otherwise as he may think fit."

"5. To grant to any person firm or corporation by way of licence any interest in the said copyright on such terms as to the payment of royalties the taking of accounts and otherwise as he may think fit.

"8. In my name to execute sign seal and deliver and perfect all such instruments acts and deeds as may be necessary and expedient for effectively doing any of the acts and things which by this power of attorney the attorney is empowered to do on my behalf."

true author was. He knew of it through a number of sources, through Pete Cameron, manager of The Weavers, who had been singing it at a night club in Greenwich Village, New York City: he knew of it through Rabindov, who had sung the song the first time it was publicly presented at the Barracks in Haifa in 1941: he knew of it through the People's Artists, Inc., unauthorized publication "Sing Out". Indeed, Richmond had the name Capt. Michrovsky written under the names of the two fictitious authors of "Tzena" (Spencer Ross and Jack Barasch) on the unpublished leadsheet which he caused to be filed in the Copyright Office in Washington. "Jack Barasch" was non-existent. But after he failed to obtain an assignment of Michrovsky's rights through Olshansky, because the terms offered were not satisfactory, Richmond eliminated the name of Michrovsky from defendant's application for a copyright of "Tzena" as a published work and sought a copyright in the names of Gordon Jenkins, author of the lyric, and Spencer Ross, as composer of the music. Jenkins actually wrote the lyric used by defendant. But Richmond, who assumed the name Spencer Ross to conceal his real identity, never wrote any part of the music. Yet the Sixteenth paragraph of the amended answer alleged:—"That prior to June 22, 1950 Gordon Jenkins and Spencer Ross then and now citizens of the United States of America created, composed and wrote a certain musical composition entitled 'Tzena, Tzena, Tzena'", and (paragraph Eighteenth) "that the said Gordon Jenkins and Spencer Ross sold, assigned, transferred and delivered unto the defendant the said composition and the right to secure copyright thereon". The defendant's edition bore the inscription "English Lyric by Gordon Jenkins"—"New Music and Arrangement by Spencer Ross—Based on Traditional Melody".

The plaintiff was obliged to make a motion before Judge Sugarman before its attorney could learn the true identity of Spencer Ross. The fraudulent assumption of the name, Spencer Ross, by Rich-

mond and his fraudulent claim to be the composer of the music were carried even further. They were embodied in a royalty arrangement between the defendant and Richmond and were included in the notice thereof which was filed with the Songwriters Protective Association on June 5, 1950. (Ex. 16A). All of this was established through defendant's own records and Richmond's testimony at the trial.

The defendant has not hesitated to plead as a defense to plaintiff's claim of infringement the doctrine of "unclean hands", charging the plaintiff and its attorneys with an alleged conspiracy. The charge as to the alleged conspiracy repeated the major part of defendant's first counterclaim for unfair competition and then alleged that plaintiff with full knowledge of Spencer Ross' alleged authorship of the musical composition "Tzena" and with full knowledge of what defendant had done to exploit the song "Tzena", conspired with plaintiff's attorney to enter into agreements with Julius Grossman, Issachar Miron (Michrovsky) and the Young Zionist Actions Committee for the purpose of asserting claims against the defendant, and that the plaintiff's publication and exploitation of the musical composition were in bad faith and "that the plaintiff comes into court with unclean hands and by reason thereof the plaintiff is barred from maintaining this action".

Grossman first heard the Gordon Jenkins' (Decca) record of "Tzena" (Ex. BBBBB) the last week of May or first week of June 1950. A few days later Grossman went to see Attorney Zissu to ask if Zissu could represent him to protect his rights. Mr. Zissu advised Grossman to get in touch with Mr. Silbermintz and Mrs. Koenig and have the people connected with the "Songs of Israel" reassign the song to Grossman. There was a discussion about Miron (Michrovsky), who wrote the other two parts of the song as Grossman learned from the "Songs of Israel" when the book was published. After Grossman had heard the Decca record in the Spring of 1950,

and after he had heard from Mr. Cooper-smith, with whom he was associated, that a Mr. Olshansky represented Miron, Grossman wanted to get in touch with him.

There were several sessions at Mr. Zissu's office with representatives of YZAC present. At the second session, June 16, 1950, the assignment from YZAC to Grossman was executed (Ex. U). The same day Mr. Grossman executed an agreement with Mills Music, Inc. at Mr. Zissu's office (Ex. B). On June 22nd, at Mr. Mills' office, Mr. Grossman executed an assignment to Mills Music, Inc. (Ex. O). On the same day, E. Olshansky, acting as Michrovsky's attorney-in-fact, executed an assignment of all Michrovsky's rights, copyrights and infringement claims (Ex. P).

Mr. Grossman learned that Cromwell Music, Inc. was the music publisher that had the Decca records made, at a meeting in Mills' office with Mr. Zissu and Mr. Olshansky a few days after Grossman signed a contract. Plaintiff published its "Tzena" on June 29, 1950 with notice of copyright and registered it for copyright on July 27, 1950.

■ The defendant's special defense of "unclean hands" asserted for the first time at the pre-trial conference, is devoid of merit and is dismissed. It is the defendant's conduct that would merit the charge.

■■ As to the other special defenses pleaded in defendant's amended answer, I find in favor of the plaintiff. That the complaint states a claim on which relief can be granted is clear from a reading of the complaint, so the first affirmative defense is dismissed. There was absolutely no proof that any portion of plaintiff's composition was copied or appropriated by Michrovsky from prior works. Michrovsky's work was original with him. The second and third affirmative defenses are accordingly dismissed. As to Michrovsky's composition I find that it never was in the Public Domain; that it was never abandoned by Michrovsky and that neither Michrov-

sky or any of his duly authorized representatives ever waived any of his rights to his musical composition "Tzena" or dedicated his composition to the public. Defendant's fourth affirmative defense is accordingly dismissed.

■ For a first counterclaim defendant pleads a claim of alleged unfair competition. It states that prior to June 22, 1950 Gordon Jenkins and Spencer Ross composed and wrote a certain musical composition entitled "Tzena"; that the defendant Cromwell, as their assignees, promoted the popularity of the song and expended large sums in doing so; that the plaintiff, without the defendant's permission copied and used defendant's musical score of "Tzena" and sold the same with the malicious intention of injuring defendant's rights in the musical composition; that plaintiff has notified those in the music publishing business and various recording companies of plaintiff's claim to superior rights in the composition "Tzena" and has greatly damaged defendant's property rights, business and good will.

The proof on the trial showed that defendant knowingly misappropriated Michrovsky's music and falsely represented that Spencer Ross, a fictitious name for defendant's general manager, Richmond, was the composer of the music. Further, plaintiff had an assignment of Michrovsky's rights. Those facts in and of themselves demonstrate the complete lack of merit in defendant's counterclaim for unfair competition. The defendant's first counterclaim is accordingly dismissed on the merits.

To the factual situation in the case at bar the closing paragraph of Judge Clark's opinion in Houghton Mifflin Co. v. Stackpole Sons, Inc., 2 Cir., 104 F.2d 306 at page 312 seems applicable. The entire absence of title or right in the defendant makes its claim that the equities are in its favor seem "indeed bold".

■ The defendant pleads a second counterclaim for violation by plaintiff of defendant's alleged copyright of the song "Tzena". The lyrics are not involved in this litigation. The "Tzena" composi-

tion published by defendant contained a lyric by Gordon Jenkins; the music allegedly was composed by Spencer Ross, a name assumed by Richmond, the defendant's general manager. The music defendant published was Michrovsky's, as defendant well knew when it applied to register its claimed copyright of both the lyric and the music on June 23, 1950. Defendant never obtained a valid copyright of the music of "Tzena". The defendant tried to get an assignment of Michrovsky's rights but did not offer standard terms. The plaintiff did, and got an assignment from Michrovsky. The defendant's second counterclaim for violation of its statutory copyright is dismissed on the merits.

At the trial the defendant's attorney conceded that the melody of the Cromwell publications, both published and unpublished, is similar to the compositions of Michrovsky (Miron) and Grossman collectively, except for a few flourishes of notes and except that they are in different keys (the Cromwell publications are in C major, the others in D major). The plaintiff's and defendant's compositions are substantially the same, melodically. No claim is made in this case with respect to any lyric similarities, in any language.

The Grossman part of the Mills publication is in the nature of a refrain, that is, it echoes the first two parts (by Miron) in character, not note for note, but in rhythm and the general nature of the tune.

A comparison of the original Miron tune and the Grossman tune with seven other versions—the YZAC Book "Songs of Israel" (Ex. C); the Mills Edition (Ex. 5); the Cromwell unpublished (Ex. 6); the Cromwell published edition (Ex. 9); the Coopersmith Book "The Songs We Sing" (Ex. BB); the Throw Sheet "Sing Out" for June 1950, a Peoples Artists Publication (Ex. 15); and the ZOA publication (Ex. 10) was made by Deems Taylor, who prepared a comparison chart (Ex. 106). He transcribed the original tunes in black; and all the notes in the others that are identical with the cor-responding notes in the original, in red; and any notes that appeared in the others but not in the original, in blue. An examination of Exhibit 106 shows that with the exception of a few single notes, the other publications were, note for note, the same as the original, for the whole forty-eight bars.

Concerning the Zimra record, Deems Taylor testified that it is based entirely on the second part of Miron's "Tzena, Tzena", as published. It does not contain the first part of Miron's work, which became the first sixteen bars of the Mills publication (Ex. 5). The first bars are what give a song its character. The third part of the Mills publication, the Grossman part, is not on the Zimra record.

Another expert, Sholom Secunda, called by plaintiff, testified to the originality of Michrovsky's (Miron's) "Tzena". Secunda was President of the Society of Jewish Composers and he had specialized in the study of Hebrew, Palestinian, Israeli, Yiddish and Middle and Eastern European music. He testified also that the Grossman third part of plaintiff's "Tzena" was original with Grossman. All this was admitted by Barlow, defendant's witness, who had written a dictionary of musical and vocal themes. Barlow was unable to point to any folksong or other musical composition, published prior to Michrovsky's (Miron's) "Tzena" (1941), that resembled it.

There is nothing, in the nature of proof, that the "Tzena" melody was known or sung anywhere prior to Miron's composition. The circumstances under which Miron composed "Tzena" in 1941 have been described in detail. Saying that the Miron composition was in the nature of a folksong, does not prove that it was known or sung prior to Miron's work. It is in the group of simple tunes, that as such become easily popular. Deems Taylor, in his long experience, had never come across any musical work which was substantially the same as the music in the Mills published work. The defendant produced no one who could

specify any earlier work similar to Miron's composition or from which it could be asserted Miron copied his composition. In every compilation of Israel's songs, Michrovsky was named as the composer. Michrovsky's composition was original and copyrightable.

■ Miron's distribution of stencil copies of his composition "Tzena" in Palestine, would not forfeit any rights he had as a composer under the British Copyright Act of 1911, which was in effect in Palestine when Miron wrote his composition "Tzena". Further, upon the termination of the British Mandate in Palestine and the establishment of the State of Israel, the British Copyright Act was continued in force by the new Government. [Copinger and Skone James on the Law of Copyright, 8th Ed. (1948) pp. 297, 298, 406, 474]; [1 United States Treaties and Other International Agreements, 1950, pp. 645–6]. Under the British Act no formalities as to publication and notice are required to obtain copyright protection, which becomes "effective automatically as soon as the work is created and reduced to visible expression". [Howell's Copyright Law, 3rd Ed. (1952) p. 194.] The British statute covers both published and unpublished works and in effect does away with the common law copyright and substitutes a statutory right in the jurisdictions to which it applies. Under English law the composer's rights are not lost by a publication without notice. Just what would be required as proof to establish an intent on a composer's part to abandon his copyright automatically created and to dedicate his copyright to the public, under English law, has not been decided. [Copinger, p. 92.] In my opinion Miron had no such intention. What Miron did with the limited number (several hundred) stencil copies of his work in Palestine is not at all comparable to the conduct of a song writer, who was also the proprietor of a London music hall, and had the words of his composition printed on the back of his programs which he distributed to his patrons and passers-by. Further, that was a very

old case (Blanchett v. Ingram [Eng.] 3 T.L.R. 678 [1886]) discussed at pages 115 and 116 of Shafter on "Musical Copyright" 2nd Ed.

Miron's distribution of the stencil copies was restricted, both as to persons and purpose. There was distribution among soldier groups for whom the song "Tzena" was originally written, and to youthful groups of Zionists, who sang it at their gatherings. The stencil copies were never sold. It was not a general distribution to any one who might ask for a copy. White v. Kimmell, 9 Cir., 193 F.2d 744, is not applicable.

In the United States a British composer's common law rights in his work are still recognized, even though in Britain those rights appear to have merged in the statutory copyright automatically created. Ferris v. Frohman, 223 U.S. 424, 32 S.Ct. 263, 56 L.Ed. 492; Roberts v. Petrova, 126 Misc. 86, 213 N.Y.S. 434.

■ Even assuming, arguendo, that Miron's distribution of stencil copies of "Tzena" to certain groups in Palestine would, under our copyright statute, constitute an abandonment of his common law rights if he had done so here, it does not follow that he thereby lost his right to have his composition copyrighted under our statute. The case of Heim v. Universal Pictures Co., 2 Cir., 154 F.2d 480, 486, which construed various sections of our copyright law specifically held:—"We construe the statute, as to a publication in a foreign country [Hungary] by a foreign author (i. e. as to a publication described in the 1914 amendment), not to require, as a condition of obtaining or maintaining a valid American copyright, that any notice be affixed to any copies whatever published in such foreign country, regardless of whether publication first occurred in that country or here, or whether it occurred before or after registration here. (Citing Ladas, The International Protection of Literary and Artistic Property [1938] 698.) * * There is no doubt textual difficulty in reconciling all the sections, as has been often observed; the most practical and,

as we think, the correct interpretation, is that publication abroad will be in all cases enough, provided that, under the laws of the country where it takes place, it does not result in putting the work into the public domain."

I have concluded that plaintiff is entitled to judgment for the infringement by defendant of plaintiff's copyright, and of Michrovsky's copyright and rights in the Michrovsky musical composition "Tzena, Tzena", of which plaintiff is the assignee. The defendant's counterclaims are dismissed on the merits. I am filing separately Findings of Fact and Conclusions of Law. The relief to which plaintiff is entitled is set forth in the Conclusions of Law. Settle a judgment and interlocutory decree accordingly.